**IN THE UNITED STATES BANKRUPTCY COURT**
**Eastern District of Virginia**
**Norfolk Division**

In re: Grecian Willette Thrias Standley          Case No. 20-71174-FJS
Debtor                                                        Chapter 13

### NOTICE OF MOTION FOR AUTHORITY TO SELL REAL PROPERTY

The above named Debtor has filed a Motion for Authority to Sell Real Property in this bankruptcy case.

**Your rights may be affected.**  **You should read these papers carefully and discuss them with your attorney, if you have one.**

Pursuant to Local Bankruptcy Rule 6004-3, notice is hereby given that:

1)      The purchase price of the Real Property is $340,000.00
2)      The Debtors will receive $2,257.77 in proceeds exempted under VA Code § 34-4.
3)      The Trustee will receive directly at closing $43,119.23 in remaining proceeds as additional funding to the case.

If you do not want the Court to grant the above-referenced Motion, then you or your attorney must:

File with the court a written request for a hearing and an answer explaining your position at:

> Clerk of Court
> United States Bankruptcy Court
> 600 Granby Street, 4th Floor
> Norfolk, VA  23510

If you mail your response to the court for filing, you must mail it to the address listed immediately above and early enough so that the Court will **receive** it within the time period stated above.

Kathryne M. Shaw (VSB #89561)
Boleman Law Firm, P.C.
Convergence Center III
272 Bendix Road, Suite 330
Virginia Beach, Virginia 23452
Telephone (757) 313-3000
Counsel for Debtor

You must also send a copy to:

Boleman Law Firm, P.C.
Convergence Center III
272 Bendix Road, Suite 330
Virginia Beach, VA  23452

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief.


Dated: December 7, 2021                    BOLEMAN LAW FIRM, P.C.
                                            Counsel for Debtor

                                    By:    /s/ Kathryne M. Shaw
                                            Kathryne M. Shaw (VSB #89561)
                                            Boleman Law Firm, P.C.
                                            Convergence Center III
                                            272 Bendix Road, Suite 330
                                            Virginia Beach, VA  23452
                                            Telephone (757) 313-3000
                                            Counsel for Debtor

## CERTIFICATE OF SERVICE

I certify that on December 7, 2021 I have transmitted a true copy of the foregoing document electronically through the Court's CM/ECF system or by mail to the Debtor, Chapter 13 trustee, the United States trustee if other than by the electronic means provided for at Local Bankruptcy Rule 2002-1, and to all creditors and parties in interest on the mailing matrix attached hereto or listed below.

**VIA Certified Mail:**

Capital One Bank
c/o Richard D. Fairbank, CEO
4851 Cox Road
Glen Allen, VA 23060

Comenity Bank
c/o John Marion, Pres.
One Righter Parkway, Suite 100
Wilmington, DE 19803

Department Store National Bank
c/o Douglas C. Morrison, CFO
5800 South Corporate Place
Sioux Falls, SD 57104

Navy Federal Credit Union
c/o Mary A. McDuffie, CEO
820 Follin Lane SE
Vienna, VA 22180

Synchrony Bank
c/o Brian D. Doubles, CEO
 170 West Election Road, Suite 125
Draper, UT 84020

PNC Bank
c/o William S. Demchak, CEO
222 Delaware Avenue
Wilmington, DE 19899

                                    /s/ Kathryne M. Shaw
                                     Counsel for Debtor

**IN THE UNITED STATES BANKRUPTCY COURT**
**Eastern District of Virginia**
**Norfolk Division**

In re: Grecian Willette Thrias Standley                    Case No. 20-71174-FJS
Debtor                                                                         Chapter 13

<u>**MOTION FOR AUTHORITY TO SELL REAL PROPERTY**</u>

Grecian Standley (the "Debtor"), by counsel, files this Motion for Authority to Sell

Real Property pursuant to 11 U.S.C. §§ 363 and 1303, Federal Rules of Bankruptcy

Procedure 2002, 6004 and 9013, and Local Bankruptcy Rules 6004-1 and 9013-1.  In

support thereof, Debtor respectfully states the following:

<u>**Jurisdiction**</u>

1.      This Court has exclusive jurisdiction over this matter pursuant to 28 U.S.C.

§ 1334.

2.      This proceeding is a core proceeding under 28 U.S.C. §157(b)(2)(A) and

(B).

3.      Venue is proper pursuant to 28 U.S.C. §1409.

<u>**Facts**</u>

4.      On April 6, 2020, Debtor filed for an order for relief under Chapter 13 of

the Bankruptcy Code pursuant to 11 U.S.C. § 101 <u>et</u> <u>seq</u>. (the "Petition Date").

5.      The Chapter 13 plan filed on October 21, 2020 has been confirmed by this

Court.

6.      On November 24, 2021, the Debtor executed an Agreement to Sell Real

Kathryne M. Shaw (VSB #89561)
Boleman Law Firm, P.C.
Convergence Center III
272 Bendix Road, Suite 330
Virginia Beach, Virginia 23452
Telephone (757) 313-3000
Counsel for Debtor

Estate (the "Sales Agreement") for the sale of the real property, for a sale price of

$340,000.00 to Alicia and Avion Speed (the "Purchaser").

7.     The real estate is commonly known as 6424 Aberdeen Place, Suffolk, VA

23435 (the "Real Property"), and a copy of the full legal description is as follows:

ALL THAT CERTAIN PARCEL OF LAND SITUATED IN SUFFOLK CITY, COMMONWEALTH OF VIRGINIA, BEING KNOWN AND
DESIGNATED AS LOT 125 AS SHOWN ON THAT CERTAIN PLAT ENTITLED "PLAT OF SUBDIVISION OF BURBAGE ACRES
(ERRONEOUSLY IN PRIOR DEED IS BURBAGE ACRES) SECTION 2, LOTS 13, 21-24, 49-50, 89-90 AND 115-147
OWNER/DEVELOPER HARBOURVIEW PARTNERS SLEEPY HOLE BOROUGH, CITY OF SUFFOLK, VIRGINIA" MADE BY AES
CONSULTING ENGINEERS, DATED MARCH 29, 1996, WHICH SAID PLAT IS DULY RECORDED IN THE CLERK'S OFFICE OF
THE CIRCUIT COURT OF THE CITY OF SUFFOLK, VIRGINIA, IN PLAT CABINET 1, SLIDES 183-E; REFERENCE TO WHICH IS
HEREBY MADE FOR A MORE PARTICULAR DESCRIPTION OF SAID PROPERTY.

BEING THE SAME PROPERTY AS CONVEYED FROM NIGEL A. TAYLOR, SINGLE TO CHRISTOPHER D. STANDLEY AND
GRECIAN W. STANDLEY, AS TENANTS BY THE ENTIRETY WITH THE RIGHT OF SURVIVORSHIP AS AT COMMON LAW, AS
DESCRIBED IN DEED INSTRUMENT NO. 20061211000245660, DATED 12/1/2006, RECORDED 12/11/2006.

TAX ID #: 304570500

FOR INFORMATIONAL PURPOSES ONLY, PROPERTY ALSO KNOWN AS: 6424 ABERDEEN PL, SUFFOLK, VA 23435

8.     The Real Property is encumbered by a lien with PNC Bank in the

approximately payoff amount of $276,678.00.

9.     Based upon the Closing Estimate provided by the closing agent and

subject to final verification at the time of closing, the estimated closing costs are

estimated to be $17,945.00.

10.    Debtor seeks permission from the Court to sell the Real Property and

distribute the proceeds of the sale in the following manner:

a.     Payment in full satisfaction of PNC Bank lien in the approximate

amount of $276,678.00.

b.      Payment in full of the closing costs in the approximate amount of

$17,945.00.

c.      Payment to the Debtor of the proceeds in the approximately

amount of $2,257.77 as exempted proceeds under VA Code § 34-4.

d.      Payment to the Trustee directly at closing of the remaining balance

of proceeds in the approximate amount of $43,119.23 as additional funding to the case.

11.     Counsel for Debtor will file a Report of Sale with the Court within twenty-

one (21) days of the closing.

12.     Debtor further request that the Court waive application of Federal Rule of

Bankruptcy Procedure 6004(h) in the instant matter in order to facilitate the efficient

closing of the sale of the Real Property.

WHEREFORE, Debtor prays that this Court enter an Order:  (1) Granting the

instant Motion, (2) Permitting Debtor to sell the Real Property, (3) directing the sale

proceeds to be applied as requested herein, (4) waiving the applicability of Federal Rule

of Bankruptcy Procedure 6004(h) in the instant matter, and (5) for such other and

further relief as the Court deems proper.

Respectfully submitted,

**Grecian Willette Thrias Standley**

By Counsel

By:     /s/ Kathryne M. Shaw
        Kathryne M. Shaw (VSB#89561)
        Boleman Law Firm, P.C.
        Convergence Center III
        272 Bendix Road, Suite 330
        Virginia Beach, VA  23452
        Telephone (757) 313-3000
        Counsel for Debtor

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 7, 2021 I have transmitted a true copy of the foregoing document electronically through the Court's CM/ECF system or by mail to the Debtor, Chapter 13 trustee, the United States trustee if other than by the electronic means provided for at Local Bankruptcy Rule 2002-1, and to all creditors and parties in interest on the mailing matrix attached hereto or listed below.

**VIA Certified Mail:**

Capital One Bank
c/o Richard D. Fairbank, CEO
4851 Cox Road
Glen Allen, VA 23060

Comenity Bank
c/o John Marion, Pres.
One Righter Parkway, Suite 100
Wilmington, DE 19803

Department Store National Bank
c/o Douglas C. Morrison, CFO
5800 South Corporate Place
Sioux Falls, SD 57104

Navy Federal Credit Union
c/o Mary A. McDuffie, CEO
820 Follin Lane SE
Vienna, VA 22180

Synchrony Bank
c/o Brian D. Doubles, CEO
 170 West Election Road, Suite 125
Draper, UT 84020

PNC Bank
c/o William S. Demchak, CEO
222 Delaware Avenue
Wilmington, DE 19899

/s/ Kathryne M. Shaw
Counsel for Debtor

ADT Security
3190 S. Vaughn Way
Aurora, CO 80014

ARS National Services
P.O. Box 463023
Escondido, CA 92046

Bon Secours at Harbour View
5818 Harbour View Blvd
Suffolk, VA 23435

Burbage Grant Homeowner's Asso
5849 Harbour View Blvd.
Suite 200
Suffolk, VA 23435

Capital One Bank/TJ Maxx
P.O. Box 180
Saint Cloud, MN 56302-0180

Charter Communications/Spectru
216 Moore Avenue
Suffolk, VA 23434

City of Suffolk
Alarm Program
P.O. Box 142557
Irving, TX 75014

Comenity Bank
P.O. Box 183043
Columbus, OH 43218-3043

Cross Road Dentistry
4107 Portsmouth Blvd
Suite #107
Chesapeake, VA 23321

Dynamic Dental Health Assoc
PO Box 936368
Atlanta, GA 31193

Elizabeth River Tunnels
Bankruptcy Department
152 Tunnel Facility Drive
Portsmouth, VA 23707

GC Services
6330 Gulfton Street
Houston, TX 77081-1108

Glasser & Glasser
Crown Center, Suite 600
580 East Main Street
Norfolk, VA 23510

Global Lending Services
Five Concourse Parkway
Suite 2925
Atlanta, GA 30325

I.C. System Inc.
444 Highway 96 East
Saint Paul, MN 55127-2557

Internal Revenue Service
Proceedings & Insolvency
P.O. Box 7346
Philadelphia, PA 19101-7346

Macy's/DSNB
P.O. Box 8053
Mason, OH 45040

Maryview Medical Center
3636 High Street
Portsmouth, VA 23707

National Collegiate Trust
P.O. Box 2402
Columbus, GA 31902

Navy Federal Credit Union
820 Follin Lane SE
Vienna, VA 22180

Orlans PC
P.O. Box 2548
Leesburg, VA 20177

Patient First
P.O. Box 758941
Baltimore, MD 21275-8941

PNC Bank
1 PNC Plaza
249 Fifth Avenue
Pittsburgh, PA 15222

Portfolio Recovery Assoc.
120 Corporate Blvd.
Norfolk, VA 23502

Receivable Management Systems
P.O. Box 73810
Richmond, VA 23235-8047

Rice Dentistry of Chesapeake
4107 Portsmouth Blvd
Suite 107
Chesapeake, VA 23321

Scott & Associates, P.C.
P.O. Box 62999
Virginia Beach, VA 23466

Second Round, LP
P.O. Box 41955
Austin, TX 78704

SYNCB/Amazon
P.O. Box 965015
Orlando, FL 32896-5015

Tate, Kirlin Associates, Inc.
2810 Southampton Road
Philadelphia, PA 19154-1207

The TJX Companies, Inc
Service R/A CT Corportation Sy
4701 Cox Rd, Sutie 285
Glen Allen, VA 23060

Thomas & Associates, P.C.
4176 South Plaza Trail
Suite 128
Virginia Beach, VA 23452

Union Federal Savings Bank
45 North Pennsylvania Street
Indianapolis, IN 46204



**REAL ESTATE INFORMATION NETWORK INC.**
**STANDARD PURCHASE AGREEMENT ("AGREEMENT")**

1  **THIS AGREEMENT** is made this _____ **11/24/2021** _____ (date),
2  between _____ **Alicia Speed** _____ **Avion Speed** _____ ("Buyer"),
3  _____ **GRECIAN STANDLEY** _____
4  _____ ("Seller"),
5  _ **Better Homes&Gardens R.E. Native American Grp** _ ("Selling Firm") (_ **102900** _ MLS Office No.)
6  and_____ **1st Class Real Estate LLC** _____ ("Listing Firm") (_ **126400** _ MLS Office No.)

7  **1.  AGREEMENT TO SELL PROPERTY:** Pursuant to the terms of this Agreement, Buyer agrees to buy and Seller
8  agrees to sell all that certain piece, parcel or lot of land and all improvements and fixtures on such land described
9  as follows: LEGAL DESCRIPTION:
10 **L.125, BURBAGE ACRES, SEC.2** _____ also known as
11 _ **6424   Aberdeen Place** _
12 _____ **Suffolk** _____ **VA   23435**
13 _____ (Street address / City / State / Zip code)
14 including, but not limited to, those items listed and described in paragraph 15 (collectively, "Property").

15 **2.  DEPOSIT:**    The    deposit    (the    "Deposit")    shall    be    in    the    amount    of
16 _____ **Seventeen Thousand** _____ and 00/100 Dollars ($_____ **17,000.00** _____)
17 and paid by ☐ personal check, ☐ federal wire transfer, ☐ certified bank check, ☐ Automated Clearing House
18 (ACH),    or    ☒other **Cashier's Check** _____ and    held
19 by_____ **Champion Title** _____ ("Escrow Agent"). The
20 Deposit shall apply as a credit to Buyer at settlement.

21 Buyer ☐ has paid the Deposit to the Escrow Agent or ☒ will pay the Deposit to the Escrow Agent within two (2)
22 business days of the "Ratification Date". For purposes of this Agreement, ratification ("Ratification") shall mean the
23 date ("Ratification Date") of communication of final written acceptance by Buyer and Seller of all the terms of this
24 Agreement, not the date of removal or expiration of any contingencies.

25 If Buyer fails to pay the Deposit set forth above or if any check or other funds paid by Buyer are dishonored, Escrow
26 Agent shall promptly provide written notice of such to Buyer and Seller. In such case, Buyer shall be in breach of
27 this Agreement and Seller may, at Seller's option, terminate this Agreement by written notice to Buyer in which event
28 neither Buyer or Seller shall have any further liability to the other.

29 **3.  PURCHASE PRICE:** The Purchase Price of the Property is as follows:
30 $_ **340,000.00** _(_____ **Three Hundred Forty Thousand** _____(Dollars)
31 ("Purchase Price") and shall be paid as follows:

32 $_____ **17,000.00** Down payment by cashier's or certified check or wire transfer to
33 the settlement agent due at settlement;
34 $_____ **323,000.00** By_____ **Conventional** _____loan to be obtained by Buyer;
35 and
36 $_____ By cash or other financing terms if applicable:
37 _____
38 VA Funding Fee, FHA MIP or Conventional PMI to be financed as applicable. If private party financing or assumption,
39 then the appropriate addendum is attached and shall become a part of this Agreement.

40 | This Purchase Agreement was fully ratified by Buyer and Seller as of: |
41 _____   SIGNATURE: *Marsharee Similein*   11/24/21
42 (RATIFICATION DATE)   ☒LISTING AGENT  OR  ☐ SELLING AGENT
43




**4. SETTLEMENT EXPENSES:** Except as otherwise stated below, Seller shall pay (i) all expenses of deed preparation, the grantor's tax on the deed, appraiser reinspection fees, and all expenses, if any, for removal of title defects and (ii) those fees charged by lender for the specified financing which, by law, Buyer is not permitted to pay. Except as otherwise stated herein, all expenses incurred by Buyer in connection with this purchase, including without limitation, title examination fees and title insurance premiums, survey costs (including elevation certificate if required by lender), insurance premiums, discount points (unless prohibited by law), prepaids, recording costs and fees of Buyer's attorney or settlement agent, shall be paid by Buyer. The amount of seller contributions to Buyer's expenses, if any, shall be inclusive of those fees charged by lender for specified financing which, by law, Buyer is not permitted to pay. Any agreed upon seller contributions to Buyer's expenses shall not include any compensation, commission, fees, charges or other amounts payable to Selling Firm unless such payment is specifically agreed to in writing by Seller in this Agreement.

**5. DEPOSIT:**

**A.** Unless otherwise agreed in writing by Buyer and Seller, if the Deposit is received by Escrow Agent prior to the Ratification Date, the Escrow Agent shall place the Deposit in an escrow account by the end of the fifth (5th) business banking day following the Ratification Date. If the Deposit is received by the Escrow Agent after the Ratification Date, the Escrow Agent shall place the Deposit in an escrow account by the end of the fifth (5th) business banking day following Escrow Agent's receipt of the Deposit. If Escrow Agent is the Listing Firm or the Selling Firm, the Deposit shall be held and applied in conformity to the Regulations of the Virginia Real Estate Board. Escrow Agent may place the Deposit in an interest-bearing account. All interest, if any, which accrues with respect to the Deposit, shall become the sole and exclusive property of Escrow Agent. Buyer and Seller waive any and all right or entitlement to such interest.

**B.** The Deposit shall remain in escrow until settlement or termination. In the event that the transaction does not close, Escrow Agent shall hold the Deposit in escrow until (i) Buyer and Seller have agreed in a written agreement as to the disposition of the Deposit and the Deposit shall be returned to the agreed-upon party as provided in such written agreement; (ii) the Deposit is successfully interpleaded into a court of competent jurisdiction pursuant to this section; (iii) a court of competent jurisdiction orders such disbursement of the Deposit; or (iv) the Escrow Agent releases the Deposit to the principal to the transaction who is entitled to receive the Deposit in accordance with the clear and explicit terms of this Agreement. Except as provided in the clear and explicit terms of this Agreement, Escrow Agent shall not be required to make a determination as to the party entitled to receive the Deposit.

At the option of a broker, written notice may be sent by the broker that release of such funds shall be made unless a written protest is received from the principal who is not receiving the funds by such broker within 15 days of the date of such notice. Notice of disbursement shall be given to the parties to the transaction in accordance with the Agreement.

**C.** If the Property is foreclosed upon while this Agreement is pending, the terms of Section 54.1-2108.1 of the Code of Virginia shall apply to the disbursement of the Deposit. Foreclosure shall be considered a termination of this Agreement, and absent any default by Buyer, the Deposit shall be disbursed to Buyer.

**6. LOAN APPLICATION / LOAN DENIAL / INTENT TO OCCUPY:**

**A. LOAN APPLICATION:**

**i.** Unless otherwise indicated below, within seven (7) days of ratification of this Agreement, Buyer shall apply for the specified financing from **Movement Mortgage - Toby Harris III, Toby.Harris3@movement.com**
(Name of Lender)
and authorize and pay for a credit report, appraisal or other requirements of such lender. If this Agreement is contingent on any inspection of the Property in paragraph 14D, the deadline for Buyer to authorize the lender to order the appraisal is extended to three (3) days after removal of the Property Inspection Contingency. **Should Buyer wish to change lenders, Buyer must obtain written permission from Seller.**



97    ii.    Buyer shall, promptly, diligently and in good faith, undertake each and every action necessary to obtain such
98          financing. Buyer's failure to do so shall constitute a default of this Agreement. Except as otherwise provided
99          in the Agreement, Buyer shall pay all costs associated with obtaining the financing. Buyer's failure to have
100         available for settlement the cash required by this Agreement, including but not limited to down payment,
101         closing costs, and prepaids, shall constitute a default of this Agreement.

102         Buyer has the responsibility to lock in the interest rate and discount points with respect to such loan(s).

103    iii.   Buyer authorizes lender to keep Listing Firm and Selling Firm apprised of progress and status of loan
104          approval, including verification that appraisal has been authorized by Buyer and confirmation of receipt of
105          the appraisal. Should the appraisal indicate an appraised value less than the Purchase Price and/or require
106          repairs, Buyer instructs lender to deliver a copy of the appraisal, applicable portions of the appraisal or
107          affidavit as to value and/or repairs, to Listing Firm upon Seller's request.

108    **iv.   Buyer's failure to comply with the provisions of paragraph 6A shall constitute a default of this**
109          **Agreement and Seller shall have the right to terminate this Agreement.**

110    **B.    LOAN DENIAL: Buyer authorizes lender to notify Seller, Listing Firm and Selling Firm of loan or**
111          **assumption denial.** If Buyer's loan or assumption application is denied, Buyer shall, within three (3) days of
112          any communication of denial to Buyer, provide written notice of such denial to Seller, Listing Firm and Selling
113          Firm. At Seller's request, Buyer shall provide Seller a copy of the lender's denial notice and any additional
114          documentation confirming the validity of such loan denial as is reasonably requested by Seller. Provided that
115          such denial was not the result of Buyer's default, including Buyer's failure to act in good faith to obtain the
116          financing or failure to have available for settlement the cash required by the terms of this Agreement, either
117          Buyer or Seller shall have the right to terminate this Agreement. In the event of such termination: (i) all parties
118          shall execute the appropriate release agreement; (ii) the Deposit shall be refunded to Buyer in accordance with
119          paragraph 5B of this Agreement; and (iii) no party to this Agreement shall have any further rights against or
120          obligations to any other party to this Agreement. Buyer's failure to send the written notice of denial within such
121          three (3) day time period shall constitute a default under this Agreement. Seller may terminate this Agreement
122          in the event of Buyer's default for failure to send the written notice of denial or in the event that loan denial was
123          the result of Buyer's default. The rights and remedies set forth in this paragraph shall be in addition to the rights
124          and remedies specified in paragraph 18.

125    **C.    INTENT TO OCCUPY:** Buyer ☒ **DOES** / ☐ **DOES NOT** intend to occupy the Property as Buyer's principal
126          residence.

127    **7.    REPRESENTATIONS:**

128    **A.**   Unless otherwise specified in this Agreement, Buyer represents that neither this Agreement nor the financing is
129          dependent or contingent on the sale, settlement, lease or refinancing of other real property.

130    **B.**   Buyer acknowledges that Seller is relying upon all of Buyer's representations, including, without limitation, the
131          accuracy of the financial information given by Buyer to Seller, Selling Firm or Listing Firm. If Buyer makes any
132          deliberate misrepresentation or material omission which results in Buyer's inability to obtain approved financing
133          then Buyer shall be deemed to be in default. Except as provided in paragraph 6B, Buyer shall notify Seller,
134          Listing Firm and Selling Firm in writing within three (3) days of Buyer's actual notice of the occurrence of any
135          material adverse change in Buyer's financial condition which prevents Buyer from obtaining the specified
136          financing under this Agreement. Buyer's failure to give notice of the material adverse change required above
137          shall constitute a default under the terms of this Agreement. Within three (3) days of receipt of written notice of
138          the material adverse change from Buyer, Seller shall notify Buyer in writing of Seller's election to: (i) proceed to
139          closing based upon a modification to this Agreement acceptable to Seller and Buyer; (ii) require that Buyer
140          deliver an acceptable First Right of Refusal Agreement; or (iii) terminate this Agreement. The rights and
141          remedies set forth in this paragraph shall be in addition to the rights and remedies specified in paragraph 18.

142    **C.**   Except as expressly provided below, Seller represents that Seller (i) owns good and marketable fee simple title
143          to the Property, (ii) has the right to transfer the Property without obtaining the consent or approval of any other
144          party, including, without limitation, judgment creditors, lienholders, or other lenders, or any court including
145          bankruptcy court or court having jurisdiction with respect to the distribution of marital property, (iii) if necessary,
146          has or will have sufficient cash or other liquid funds to make any payments required to be made in order to pay
147          all brokerage fees due and transfer the Property without any liens attaching to the Property, and (iv) will be in a
148          position to transfer title to the Property to Buyer free and clear of all liens, leases and tenancies except as
149          expressly provided in this Agreement. Seller further represents and warrants that this Agreement is the valid and

Initials: Buyer  / _____ Seller _____ / _____



150   binding obligation of Seller and that the party executing this Agreement on behalf of the Seller (in the event
151   Seller is not an individual) has the authority to execute and deliver this Agreement on behalf of the Seller.

**Exceptions:**

153
154
155
156

D.   Except as noted below, Seller represents and warrants that Seller is not a nonresident alien, foreign estate,
157   foreign trust, foreign partnership or foreign corporation as those terms are defined in the Internal Revenue Code
158   and applicable United States Treasury Regulations, including Internal Revenue Code Sections 1445 and 1446.
159   Buyer understands that if the Seller is a nonresident alien, foreign estate, foreign trust, foreign partnership or
160   foreign corporation as those terms are defined in the Internal Revenue Code and applicable United States
161   Treasury Regulations, including Internal Revenue Code Section 1445 and 1446, Buyer may be responsible for
162   collecting and filing tax withholding on Seller's behalf as required under such regulations.  Legal counsel should
163   be consulted._____
164
165   _____
166   _____ .

E.   Seller also represents and warrants that (Check appropriate box):

168   [X]   **The Property is not served by an onsite septic system.**

169   [ ]   **The Property is served by an onsite septic system that is not subject to a waiver.**

170   [ ]   **The Property is served by an onsite septic system that has been granted a waiver which is not**
171   **transferable to Buyer. Buyer has received from Seller the Disclosure Regarding Validity of Septic**
172   **System Operating Permit as required by §32.1-164.1:1 of the Code of Virginia, a copy of which is**
173   **attached to this Agreement. A copy of the Onsite Sewage (Septic) Addendum is attached and shall**
174   **become a part of this Agreement.**

175   [ ]   **Other (enter the applicable exemption for transfer subject to waiver pursuant to §32.1-164.1:1.C. of**
176   **the Code of Virginia) _____**

F.   If any representation by Seller is materially untrue, Seller shall be deemed to be in default under the terms of
177   this Agreement and Buyer shall have the right to terminate this Agreement, whereupon the Deposit shall be paid
178   to Buyer, in accordance with paragraph 5B, and Buyer shall have all of its rights as the non-defaulting party
179   under paragraph 18. Additionally, if settlement does not occur as a result of Seller's misrepresentations and
180   Buyer incurs any expense relative to appraisal and property inspection, Seller will be deemed liable for such
181   expense and Buyer may, in addition to its other rights under this Agreement, recover such expense, including
182   reasonable attorney's fees, from Seller._____
183
184
185

186   8.   **SETTLEMENT / POSSESSION:** Settlement to be on or before _____**1/8/2022**_____ ("Settlement
187   Date").**The Settlement Date may be extended by _____days (if blank, the parties deem the extension**
188   **to be 10 days) solely for the purpose of:**

189   i.   **processing and closing the specified loan in compliance with applicable law and/or**

190   ii.   **correcting any defects reported by a title examiner.**

191   **The Settlement Date shall be deemed to include any extension ONLY as provided for in (i) or (ii) above.** If
192   through no fault of Seller settlement has not occurred by the Settlement Date, then Seller, at Seller's option, may
193   terminate this Agreement by written notice to Buyer. If through no fault of Buyer settlement has not occurred by the
194   Settlement Date, then Buyer, at Buyer's option, may terminate this Agreement by written notice to Seller. Nothing
195   contained herein shall be construed to limit, in any way, any other legal remedy or right Seller, Buyer, Listing Firm
196   and/or Selling Firm may have for either party's failure to close on or before Settlement Date or at any time thereafter.
197   Possession of the Property shall be given at settlement unless otherwise agreed to in writing by Buyer and Seller.
198   At settlement, Seller shall execute and deliver (i) the deed, (ii) a mechanic's lien affidavit acceptable to Buyer's title
199   insurance company and (iii) such certificates or agreements as may be required by state and federal authorities for
200   tax and residency purposes. Seller and Purchaser agree to release and hold harmless Listing Firm, Selling Firm, the
201   officers, directors and employees, and any real estate broker or salesperson employed by or affiliated with the Listing

TRANSACTIONS
TransactionDesk Edition

Authentisign ID: 98393257-964D-EC41-9820-0050F210E5C6

202 Firm or Selling Firm from any delay or expense caused by such delay in settlement due to regulatory or legal
203 requirements.

204 Choice of Settlement Agent: Chapter 10 (§55.1-1000 et seq.) of Title 55.1 of the Code of Virginia provides that the
205 Buyer has the right to select the settlement agent to handle the closing of this transaction. The settlement agent's
206 role in closing this transaction involves the coordination of numerous administrative and clerical functions relating to
207 the collection of documents and the collection and disbursement of funds required to carry out the terms of the
208 contract between the parties. If part of the purchase price is financed, the lender for the Buyer will instruct the
209 settlement agent as to the signing and recording of loan documents and the disbursement of loan proceeds. No
210 settlement agent can provide legal advice to any party to the transaction except a settlement agent who is engaged
211 in the private practice of law in Virginia and who has been retained or engaged by a party to the transaction for the
212 purpose of providing legal services to that party.

213 Variation by agreement: The provisions of Chapter 10 (§ 55.1-1000 et seq.) of Title 55.1 of the Code of Virginia may
214 not be varied by agreement, and rights conferred by this chapter may not be waived. The Seller may not require the
215 use of a particular settlement agent as a condition of the sale of the Property.

216 Escrow, closing and settlement service guidelines: The Virginia State Bar issues guidelines to help settlement agents
217 avoid and prevent the unauthorized practice of law in connection with furnishing escrow, settlement or closing
218 services. As a party to a real estate transaction, the Buyer is entitled to receive a copy of these guidelines from the
219 settlement agent, upon request, in accordance with the provisions of Chapter 10 (§ 55.1-1000 et seq.) of Title 55.1
220 of the Code of Virginia.

221 Buyer and Seller each authorize their respective attorneys, lenders and/or the settlement agent, to furnish prior to
222 the Settlement Date to all parties including, Listing Firm and Selling Firm, complete copies of the draft and final
223 closing disclosure/settlement statement for the sale of the Property, including the HUD-1 settlement statement, the
224 TILA-RESPA settlement statement, the ALTA settlement statement combined, the Seller Closing Disclosure (Seller's
225 CD) and/or the Buyer's Closing Disclosure (Buyer's CD).

226 **9.   DEED AND TITLE:**

227 **A.**  Except as expressly provided in writing, representations and warranties made by Seller herein and all other
228 provisions of this Agreement shall be deemed merged into the deed delivered at settlement and shall not survive
229 settlement, unless otherwise provided herein. Seller shall convey marketable and insurable title to the Property
230 by general warranty deed, unless otherwise specified below, subject to any easements, covenants and
231 restrictions of record, which do not adversely affect the use of the Property for residential purposes. Title to the
232 Property shall be conveyed (i) free and clear of all liens, tenancies and encumbrances of every kind except those
233 stated herein, and (ii) with marketable and insurable access to a publicly dedicated road.

234
235
236

237 **B.**  Buyer will be required to purchase a lender's title insurance policy if the Buyer is obtaining a loan secured by the
238 Property. Buyer may, at Buyer's expense, purchase an owner's title insurance policy which insures Buyer's title
239 to the Property, subject to the terms of such policy. The coverage afforded by such title insurance would be
240 governed by the terms of the policy and any exceptions to the policy, and the premium for obtaining such title
241 insurance coverage will be determined by its coverage and the title insurer. Buyer may purchase either
242 "standard" or "enhanced" coverage which coverages have differing rates. Buyer authorizes Buyer's lender(s), if
243 any, to include a quote for a premium for an owner's title insurance policy in the Loan Estimate based on
244 enhanced coverage. Buyer understands that nothing in this Purchase Agreement obligates Buyer to obtain any
245 owner's title insurance coverage at any time, including at Closing, and that the availability of enhanced coverage
246 is subject to underwriting criteria of the title insurer. Buyer should consult Buyer's attorney with respect to
247 obtaining owner's title insurance.

248 **C.**  Buyer, at Buyer's expense, ☒ **WAIVES/** ☐ **DESIRES** a survey and, if appropriate, elevation certificate of the
249 Property by a licensed surveyor. Notwithstanding the foregoing, in the event Buyer's lender and/or title company
250 requires a survey and/or an elevation certificate, Buyer shall, at Buyer's expense, obtain such survey and/or
251 elevation certificate prior to settlement.



252   **10. PRORATIONS / ESCROW:**

253   ☒ **A.** If new financing, or cash sale, all real property taxes, insurance, rents, interest, and appropriate homeowner's
254   association and/or condominium fees or dues and other reserves and assessments shall be prorated as of
255   Settlement Date.

256   ☐ **B.** If an assumption, all real property taxes, all insurance (if allowed), rents, interest, and appropriate homeowner's
257   association and/or condominium fees or dues and other reserves, if any, shall be ☐ **PRORATED** or ☐ **CURRENT**
258   **AND TRANSFERRED GRATIS** as of Settlement Date.

259   **11. VA/FHA/CONVENTIONAL FINANCING OR CASH CONTINGENCY:** If noted below, Buyer's obligations under this
260   Agreement are conditioned upon the applicable contingency: **(Check A, B, or C, as applicable)**

261   ☐ **A. HUD/FHA or VA FINANCING:**

262   (I)    It is expressly agreed that, notwithstanding any other provisions of this Agreement, Buyer shall not be
263           obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of
264           earnest money deposits or otherwise unless Buyer has been given in accordance with HUD/FHA or VA
265           requirements a written statement issued by the Federal Housing Commissioner, Department of Veterans
266           Affairs or a Direct Endorsement Lender setting forth the appraised value of the Property (excluding closing
267           costs) as not less than the Purchase Price. Buyer shall have the privilege and option of proceeding with
268           consummation of this Agreement without regard to the amount of the appraised valuation by giving Seller
269           written notice thereof within three (3) days after receipt of notification of the appraised value. THE
270           APPRAISED VALUATION IS ARRIVED AT TO DETERMINE THE MAXIMUM MORTGAGE THE
271           DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT/DEPARTMENT OF VETERANS AFFAIRS
272           WILL INSURE. HUD/DEPARTMENT OF VETERAN AFFAIRS DOES NOT WARRANT THE VALUE OR
273           THE CONDITION OF THE PROPERTY. BUYER SHOULD SATISFY HIMSELF/HERSELF THAT THE
274           PRICE AND CONDITION OF THE PROPERTY ARE ACCEPTABLE.

275   (II)   If Buyer is obtaining VA financing and elects to complete the purchase at a price in excess of the appraised
276           value as established by the Department of Veterans Affairs (the "Department"), Buyer will disclose the
277           source of such funds to the Department and pay the excess amount from such source. Such funds will not
278           be borrowed funds unless approved by the Department.

279   (III)  If Buyer is obtaining FHA financing, the parties acknowledge that the loan amount may be approximate
280           because financed acquisition costs cannot be determined until settlement.

281   ☒ **B. CONVENTIONAL FINANCING:** It is expressly agreed that, notwithstanding any other provisions of this
282   Agreement, Buyer shall not incur any penalty by forfeiture of the Deposit or otherwise be obligated to complete the
283   purchase of the Property if the Purchase Price exceeds the final determination of appraised value established by
284   the appraiser ("Appraised Value") and Seller does not agree to reduce the Purchase Price to the Appraised Value.
285   Buyer shall have the privilege and option of proceeding to settlement without regard to the Appraised Value. In the
286   event the Purchase Price exceeds the Appraised Value and Seller or Listing Firm notifies Buyer or Selling Firm that
287   Seller agrees to reduce the Purchase Price to the Appraised Value, then this Agreement will remain in force and
288   settlement shall occur as specified in paragraph 8 of this Agreement.

289   ☐ **C. CASH:** Buyer ☒ **DOES /** ☐ **DOES NOT** wish to order an appraisal. If Buyer wishes to order an appraisal,
290   the appraisal must be paid for and ordered within seven (7) days after ratification of this Agreement or three (3) days
291   after removal of the property inspection contingency referenced in paragraph 14D or the appraisal contingency shall
292   be waived by Buyer. Notwithstanding any other provisions in this Agreement, Buyer reserves all rights outlined in
293   the following paragraph in the event the Appraised Value is less than the Purchase Price.

294   **APPRAISED VALUE:**  With respect to paragraphs 11B and 11C above, if, for any reason, the Appraised Value is
295   less than the agreed upon Purchase Price, Buyer shall have three (3) days from receipt and notification of the
296   Appraised Value to Seller to either (a) agree in writing to proceeding to settlement without regard to the Appraised
297   Value, or (b) negotiate with Seller to find an acceptable agreement. If after three (3) days Buyer has not agreed to
298   proceed to settlement regardless of Appraised Value, Seller has not agreed to reduce the Purchase Price to the
299   Appraised Value, or an alternate acceptable to both Buyer and Seller has not been agreed to in writing, then either
300   Buyer or Seller may terminate this Agreement. If terminated, Buyer and Seller shall execute a Release with full
301   refund of the Deposit to Buyer.

302  **12. PROPERTY CONDITION:** With the exception of the rights reserved by Buyer pursuant to paragraph 14 and subject
303  to any inspections provided for in paragraph 13, Buyer represents that Buyer has inspected the Property and accepts
304  the Property in its present condition except noted as follows:

305  _____
306  _____
307  _____

308  Seller shall repair or replace the above noted items, in a workmanlike manner, at Seller's expense prior to the walk
309  through inspection. Buyer acknowledges that Buyer has not relied upon any representation or warranty made by
310  Listing Firm, Selling Firm or Seller not expressly set forth in this Agreement with respect to the condition of the
311  Property. **Seller shall deliver the Property at settlement, or as otherwise provided, in substantially the same**
312  **condition as of the date of this Agreement, and except as provided in paragraph 15, free of personal property,**
313  **debris and trash. Seller assumes, until settlement, all risks of loss or damage to the Property by fire,**
314  **windstorm, casualty or other hazards.**

315  **Buyer ☐ HAS  ☒ HAS NOT physically inspected the Property in person prior to execution of this Agreement.**
316  **If Buyer has not physically inspected the Property, Buyer is required to execute the No Physical Inspection**
317  **Addendum which shall be incorporated into this Agreement.**

318  **13. INSPECTIONS/REPAIRS/TREATMENTS/CAP:** Seller shall be responsible for the cost of repairs referenced in this
319  paragraph 13 in a total amount not to exceed _____ % (if blank, the parties deem the amount to be
320  1%) of the Purchase Price ("the Cap"). Seller will remain obligated to make repairs arising under this paragraph 13A
321  (Appraisal and Required Repairs), B (Wood Destroying Insect Infestation / Moisture / Inspection / Repairs), or C
322  (Drinking Water and Septic) up to the amount of the Cap even if such repair is waived by Buyer as part of the
323  Property Inspection Contingency Removal Addendum. If the total estimated costs of the repairs described in
324  paragraphs 13 A, B, C, and D collectively exceed the Cap, then Buyer alone, or Seller alone, or Buyer and Seller
325  jointly can agree to pay the excess. If neither party agrees to pay the excess amount and an acceptable alternative
326  agreement cannot be reached, then this Agreement shall be terminated, all parties shall execute a release
327  agreement, and the Deposit shall be refunded in full to Buyer.

328  **A. APPRAISAL AND REQUIRED REPAIRS:** Subject to the Cap, Seller shall make any repairs required by Lender
329  as a result of the appraisal, or as may be required by governmental agencies, prior to the walk through
330  inspection.

331  **B. WOOD DESTROYING INSECT INFESTATION (WDII) / MOISTURE INSPECTION/REPAIRS:**

332  **1. INSPECTION / REPORTS: ☒ BUYER / ☐ SELLER** shall obtain and authorize delivery at ☒ **BUYER'S**
333  **/ ☐ SELLER'S** expense, an approved Wood Destroying Insect Infestation Inspection Report and a
334  Moisture Inspection Report, (collectively referred to as the "Reports") and any re-inspection reports if
335  required, from a licensed pest control operator. The Wood Destroying Insect Infestation Inspection Report
336  shall show whether the Property's principal dwelling, garage, and the following additional structures

337  _____
338  _____ are free of visible wood destroying insect
339  infestation with no visible unrepaired damage from said infestation. The Moisture Inspection Report shall
340  show whether readily accessible areas of the foundation and understructure, including crawl space, sill
341  plates, joists, sub-flooring and substructure support timbers are free of standing water, visible moisture
342  damage and wood destroying fungi. The Reports must be obtained and delivered to settlement agent, within
343  _____**Fourteen**_____ (__ **14** __) days after ratification of this Agreement. If
344  new VA financing is involved, Seller shall reimburse Buyer for the cost of the original termite/moisture
345  inspection, if paid by Buyer.

346  If the Reports are not obtained and delivered within the above time frame, the other party shall have the
347  right to order the Reports at the expense of the party initially obligated to obtain the Reports. The obligation
348  to reimburse the cost of obtaining the Reports by the other party shall not exceed $_____.

349  **2. TREATMENT:** Treatment, if required, shall be performed by the company issuing the Reports. Cost of
350  treatment shall be at Seller's expense, subject to the Cap.

351  **3. REPAIRS:** Seller shall correct in a workmanlike manner, at Seller's expense, subject to the Cap, all standing
352  water and damage identified in the Reports prior to the walk through inspection. The selection of the
353  company to make any repairs, if required, shall be at the Seller's discretion. Buyer reserves the right to have



354   the required repairs re-inspected at or prior to walk-through to ensure repairs were completed in a
355   workmanlike manner.

356   **C. DRINKING WATER AND SEPTIC:**

357   **1. DRINKING WATER:** The Property is served by (Check One):

358   ☒ **PUBLIC / PRIVATE** utilities supplying drinking water, OR

359   ☐ **WELL / CISTERN** providing potable drinking water.

360   ☐ **BUYER /** ☐ **SELLER** shall obtain prior to the walk through inspection at ☐ **BUYER'S /**
361   ☐ **SELLER'S** expense, a test confirming the water is safe for human consumption from the appropriate
362   governmental authority or from an acceptable private company, indicating that the well water is safe
363   for human consumption. If the water is found unsafe for human consumption, and the Property is
364   not served by another potable water source (i.e. city water line), Seller shall remedy prior to the walk
365   through inspection all defects and provide a test confirming the water is safe for human consumption
366   at Seller's expense, subject to the Cap.

367   **2. SEPTIC:**

368   If the Property is served by a septic system ☐ **BUYER /** ☐ **SELLER** shall obtain prior to the walk through
369   inspection at ☐ **BUYER'S /** ☐ **SELLER'S** expense, a written statement addressed to Buyer from either:
370   (a).   an "accredited septic system inspector" as defined in §59.1-310.9 of the Code of Virginia; or
371   (b).   an individual who holds a valid onsite sewage system operator, onsite sewage system installer
372   or soil evaluator license pursuant to Chapter 23 of Title 54.1 of the Code of Virginia
373   (such individual being referred to as a "Septic Inspector" for the purposes of this Agreement), indicating the
374   condition of the system and any malfunction or noncompliance with applicable ordinances and regulations.

375
376   The inspection ☐ **SHALL/** ☐ **SHALL NOT** include pumping the septic system at the expense of the
377   responsible party above prior to the walk through inspection. However, in the event the Septic Inspector
378   requires that the septic system be pumped prior to the inspection of the septic system, the responsible party
379   identified above shall pay to pump the septic system. Any required pumping of the septic system shall apply
380   to the cap.

381   If the septic system is found defective or in noncompliance with applicable governmental regulations by the
382   Septic Inspector, Seller shall repair and correct all defects prior to the walk through inspection at Seller's
383   expense, subject to the Cap.

384   **D. WALK THROUGH INSPECTION:** Buyer reserves the right to have a walk through inspection prior to settlement
385   to determine the Property is in substantially the same condition as of the date of this Agreement, and all
386   appliances, heating and cooling equipment, plumbing and electrical systems, and all other equipment ("Walk
387   Through Items") are in working order at time of settlement or possession, whichever occurs first. ☐ **BUYER /**
388   ☒ **SELLER** shall be responsible for providing all utilities required for such inspection. Subject to the Cap, Seller
389   shall repair all non-working Walk Through Items at Seller's expense unless waived. Neither Listing Firm nor
390   Selling Firm shall be responsible for determining that the Walk Through Items are in working order.

391   **14. CONTINGENCIES:** This Agreement shall be contingent upon the following conditions and those noted in the
392   attached contingency addendum/addenda, if any:

393   **A. CONDOMINIUM:** Buyer and Seller acknowledge that the Property (check as applicable):

394   **1.** ☒ **IS NOT** in a community subject to the Virginia Condominium Act (the "Condo Act").

395   **2.** ☐ **IS** a resale of a Condominium Unit which currently has mandatory monthly fees of approximately
396   $_____and is subject to the Condo Act and the Condominium Addendum is
397   attached to and shall become part of this Agreement. **Buyer's rights under this paragraph may not be**
398   **waived.**

399   **3.** ☐ **WILL BE** in a community subject to the Condo Act in the event of a conversion or new construction.

400   (i)   Until delivery to Buyer of a current Public Offering Statement for the Condominium, this Agreement shall
401   constitute a nonbinding reservation agreement only and creates no obligation on the part of Buyer and
402   is subject to cancellation without penalty by Buyer in Buyer's sole discretion in accordance with
403   Section (ii) below.

PA (Last Revised 07/01/2021)
© 2021. Real Estate Information Network Inc.

Initials: Buyer _____ AS _____ / _____ AS _____   Seller _____ gs _____ / _____

Page 8 of 15

TRANSACTIONS
TransactionDesk Edition

      (ii)  Upon delivery to Buyer of a current Public Offering Statement, Buyer shall be deemed to have entered into a binding purchase agreement subject to Buyer's right to cancel within five (5) days after delivery. If Buyer elects to cancel, Buyer may do so by written notice given in accordance with paragraph 23, within the five (5) day period. Such cancellation shall be without penalty, and the Deposit shall be promptly refunded in its entirety, without interest. **Buyer's rights under this paragraph may not be waived.**

**4.** ☐ **IS** a resale of a condominium unit in a condominium consisting of 3 or fewer units and as such is exempt from the requirements in the Condo Act relating to a resale certificate and/or a public offering statement. Prior to executing this Agreement, Buyer is advised to address all concerns relating to the Property being a condominium unit, including without limitation and by way of explanation, issues related to hazard and liability insurance, current and proposed maintenance and repairs, common expenses, restrictions and agreements contained in the documents creating the condominium and similar items.

**B. PROPERTY OWNERS' ASSOCIATIONS:** Buyer and Seller acknowledge that the Property (check one):

    **1.** ☐ **IS NOT** in a community subject to the Virginia Property Owners' Association Act (the "POA Act").

    **2.** ☒ **IS** in a community which currently has mandatory monthly fees of approximately $_____**38.00**_____ and is subject to the POA Act. The Property Owners' Association Addendum is attached to and shall become part of this Agreement. **Buyer's rights under this paragraph may not be waived.**

**C. CO-OPERATIVE:**

    **1.** ☒ **IS NOT** in a community subject to the Virginia Real Estate Cooperative Act (the "Co-Op Act").

    **2.** ☐ **IS** a Cooperative Unit which currently has mandatory monthly fees of approximately $_____ and is subject to the Co-Op Act and the Cooperative Interest Addendum is attached to and shall become part of this Agreement.

**D. PROPERTY INSPECTIONS:** Buyer may request, at Buyer's expense, the following inspections:

    **1. PROPERTY INSPECTION:** An inspection of the Property at Buyer's cost to determine the condition of the Property. Buyer ☐ **WAIVES /** ☒ **DESIRES** an inspection to be performed on the Property at Buyer's expense. If Buyer desires a property inspection, the REIN Property Inspection Contingency Addendum is attached and shall become part of this Agreement. Should Buyer elect to waive the property inspection, Buyer understands that a home inspector will not be permitted to conduct, or perform a property inspection at Walk-Through beyond the terms of paragraph 13D.

    **2. EXTERIOR INSULATION AND FINISH SYSTEM (EIFS):** ☐ **N/A**

    An inspection and moisture test of the EIFS (Exterior Insulation & Finish System or synthetic stucco) by a qualified professional with experience in this field provided that, in the event the property is a condominium unit, the right to inspect may be limited by rights of other unit owners or the condominium association. Buyer ☒ **WAIVES /** ☐ **DESIRES** an EIFS inspection to be performed on the Property. If Buyer desires an EIFS inspection, the Property Inspection Contingency Addendum is attached and shall become part of this Agreement.

    **3. LEAD-BASED PAINT DISCLOSURE:** ☒ **N/A – Property was not constructed prior to 1978.**

    A risk assessment or inspection of the Property to determine the presence of lead-based paint and/or lead-based paint hazards. The Residential Lead-Based Paint Hazard Reduction Act of 1992 requires Seller to make disclosures with respect to the presence of lead-based paint and/or lead-based paint hazards in properties built prior to 1978. This Act does not apply to properties built in 1978 and later. In the event the Property was built prior to 1978, Seller and Buyer acknowledge that a copy of the signed Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards is attached to this Agreement. Buyer ☐ **WAIVES /** ☐ **DESIRES** a risk assessment or inspection be performed on the Property. If Buyer desires a risk assessment or inspection of the Property, then a copy of the Property Inspection Contingency Addendum is attached and shall become a part of this Agreement.

    **4. OTHER INSPECTIONS:** If Buyer desires Other Inspections, the Property Inspection Contingency Addendum is attached and shall become a part of this Agreement.




453  E.  **OTHER CONTINGENCIES:**

454  **If the contract does not appraise at the contract price, buyer agrees to pay the difference**
455  **between appraised value and contract price.**
456
457  **Purchase Price Escalation not to exceed $350,000. (see addendum for more details)**
458
459

460  **15.  ITEMS TO CONVEY:** All fixtures constituting a part of the "Property" and any personal property which convey as
461  specifically described in the Agreement or as noted below are included in the Purchase Price and shall be transferred
462  free of liens:

463  **Appliances:**
464  ☒ Gas Range
465  ☐ Electric Range
466  ☐ Microwave Oven
467  ☒ #__**1**__ Refrigerator(s)
468  ☒ Dishwasher
469  ☐ Ice Maker (Standalone)
470  ☐ Freezer
471  ☐ Clothes Dryer
472  ☐ Clothes Washer
473  ☒ #___**1**___ Garbage Disposal(s)
474
475  **Windows:**
476  ☒ Blinds
477  ☐ Curtains/Drapes
478  ☐ Hardware

**Equipment:**
☐ Furnace Humidifier
☐ Water Softener
☐ Well Pump & Equipment
☐ Sump Pump
☐ #_____ Window A/C Unit(s)
☒ #__**All**__ Smoke Alarm(s)
☐ Playground Equipment
☒ #__**All**__ Ceiling Fan(s)
☐ Satellite Dish & Hardware

**Other:**
☒ #__**All**__ Trash Container(s)
☒ #__**All**__ Recycling Container(s)
☐ Fuel in Tanks (Oil, Propane)

**Dock, Pool and Hot Tub:**
☐ Floating Dock
☐ #_____ Boat Lift(s)
☐ Pool
☐ Pool Equipment
☐ Pool Cover
☐ Hot Tub
☐ Hot Tub Equipment
☐ Hot Tub Cover

☒ Fireplace:
☒ Screen
☒ Doors
☒ Equipment / Tools
☒ Gas Logs
☐ Wood Stove

479  ☒ #__**All**__ Garage Door Opener(s) and #___**All**___ Remote(s)

480  **ADDITIONAL ITEMS / NOTES:**
481
482
483
484

485  **16. CONFIRMATIONS AND DISCLOSURES:** Buyer and Seller acknowledge receipt of their REIN Consumer
486  Disclosure Information Form and Summary Of Rights And Obligations Of Sellers And Purchasers Under The Virginia
487  Residential Property Disclosure Act Form  prior to entering into this Agreement as well as the following disclosures.

488  **Neither Seller, Real Estate Information Network Inc. ("REIN"), Listing Firm, Selling Firm, nor their employees**
489  **or agents will be held responsible for Buyer's failure to have investigated and evaluated the impact of any**
490  **of the disclosures made in this Agreement on the Property, including those additional disclosures on the**
491  **Consumer Disclosure Information Form and Summary Of Rights And Obligations Of Sellers And Purchasers**
492  **Under The Virginia Residential Property Disclosure Act Form .**

493  **A.  CONFIRMATION OF BROKERAGE RELATIONSHIP:** The parties confirm in connection with this transaction
494  that Listing Firm and Selling Firm have represented the party or parties indicated below. Notwithstanding the
495  provisions of paragraph 17 of this Purchase Agreement relating to the payment of brokerage fees, the parties
496  agree that one of the following may apply:
497  **(Check appropriate box.)**

498  ☐  1.  Listing Firm, Selling Firm, and their salesperson(s) represent Seller as their client. Buyer is a customer/
499  unrepresented party and their salesperson(s) represent Seller as their client. Buyer **has signed the**
500  **Disclosure of Brokerage Relationship to Unrepresented Party form.**

501  ☒  2.  Listing Firm and its salesperson(s) represent Seller. Selling Firm and its salesperson(s) represent Buyer.

TRANSACTIONS
TransactionDesk Edition

3. Listing Firm and its salesperson(s) represent Seller. Selling Firm and its salesperson(s) represent neither Buyer nor Seller.

4. The Parties confirm that Selling Firm and its salesperson(s) represent Buyer as their client. Seller is a customer/unrepresented party and **has signed the Disclosure of Brokerage Relationship to Unrepresented Party form.**

5. Listing Firm and its salesperson(s) represent both Buyer and Seller as DUAL AGENTS OR DUAL REPRESENTATIVES, by mutual agreement. **Buyer and Seller have signed the Disclosure of Dual Agency or Dual Representation in a Residential Real Estate Transaction Form attached.**

6. Listing Firm and its broker represent both Buyer and Seller as DESIGNATED AGENTS OR DESIGNATED REPRESENTATIVES, by mutual agreement. **Buyer and Seller have signed the Disclosure of Designated Agents or Representatives in a Residential Real Estate Transaction Form attached.**

7. Buyer and Seller acknowledge that no brokerage relationship exists with any agent involved in this transaction. Both Buyer and Seller are unrepresented customers.

**B. AIRCRAFT NOISE ZONE / ACCIDENT POTENTIAL ZONE DISCLOSURE:** ☐ **N/A**

Aircraft noise and/or accident zones are subject to change. If the Property is located in the cities of Norfolk, Virginia Beach, Chesapeake or Hampton, Buyer and Seller hereby acknowledge that as of the date of this Agreement current maps indicate the Property is located in an Aircraft Noise Zone _____**-65**_____ and/or Aircraft Accident Potential Zone _____**None**_____ (or similar designations). Noise attenuation measures for new residential construction or modifications to nonconforming structures may be required and height restrictions may have been imposed in accordance with city ordinances. The Real Estate Transfer Disclosure for Properties Located in a Locality in Which a Military Air Installation is Located is attached, as required by § 55.1-704 of the Code of Virginia.

**C. VIRGINIA RESIDENTIAL PROPERTY DISCLOSURE ACT**: The Virginia Residential Property Disclosure Act (the "Act") requires sellers of residential real property to disclose to buyers certain information known to the sellers regarding the condition of the property to be purchased. Seller and Buyer acknowledge that a Residential Property Disclosure Statement, attached hereto, has been provided by Seller to Buyer prior to ratification of this Agreement and if the Property is an exempted property pursuant to § 55.1-702 of the Act then this paragraph does not apply.

**D. AGENCY INTEREST DISCLOSURE**: Except as otherwise disclosed below neither Listing Agent nor Selling Agent, any member of such agent's family, or such agent's firm, any member of such firm, or any entities in which such agent has an ownership interest is acquiring or attempting to acquire, or is selling the Property. Except as disclosed below, neither Seller nor Buyer is a licensed real estate agent:

_____
_____
_____
_____
_____

**E. MEGAN'S LAW DISCLOSURE**: Buyer(s) should exercise whatever due diligence they deem necessary with respect to information on any sexual offenders registered under Chapter 23 (§ 19.2-387 et seq.) of Title 19.2 whether the owner proceeds under subdivision 5 of subsection B of § 55.1-703. Such information may be obtained by contacting your local police department or the Department of State Police, Central Criminal Records Exchange, at 804-674-2000 or https://sex-offender.vsp.virginia.gov/sor.

**F. MECHANICS LIEN**: Virginia law (§ 43-1 et seq.) permits persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against the Property. This lien may be filed at any time after the work is commenced or the material is furnished, but not later than the earlier of (i) ninety (90) days from the last day of the month in which the lien or last performed work or furnished materials or (ii) ninety (90) days from the time the construction, removal, repair or improvement is terminated. Seller warrants that all bills related to any repairs or improvements made to the Property have been paid or will be paid by Seller from the proceeds at settlement. AN EFFECTIVE LIEN FOR WORK PERFORMED PRIOR TO THE DATE OF SETTLEMENT MAY BE FILED AFTER SETTLEMENT. LEGAL COUNSEL SHOULD BE CONSULTED.

PA (Last Revised 07/01/2021)
© 2021. Real Estate Information Network Inc.

Initials: Buyer ___ ___ Seller ___ ___



555  **G. SQUARE FOOTAGE/ACREAGE AND/OR OTHER PROPERTY MEASUREMENTS**: Any representation of
556  square footage, acreage and/or other property measurements are approximate, subject to variation based on
557  method of measurement, and should be independently confirmed by Buyer. Buyer acknowledges and agrees
558  that Buyer has undertaken any and all investigations Buyer desires with respect to obtaining measurements of
559  the Property, including the square footage of the rooms, the acreage of the lot or the other measurements related
560  to the Property and finds any and all such measurements to be acceptable and shall not use the size, acreage
561  or square footage of the Property as the basis for any termination of this Agreement. Buyer agrees to waive,
562  release and discharge all parties to this Agreement, including REIN, from any and all claims that the square
563  footage, acreage or other measurements of the Property were incorrectly stated in any literature concerning
564  the Property generated by REIN's MLS Systems, including Listing and / or Tax reports.

565  **H. PENDING BUILDING OR ZONING VIOLATIONS:** Unless disclosed in writing below Seller has no actual
566  knowledge that the Property has pending enforcement actions pursuant to the Uniform Statewide Building Code.
567  Section 55.1-706 of the Code of Virginia states that if the Seller of a residential dwelling unit has actual
568  knowledge of any pending enforcement actions pursuant to the Uniform Statewide Building Code that affect the
569  safe, decent, sanitary living conditions of the Property of which the Seller has been notified in writing by the
570  locality, or any pending violation of the local zoning ordinance that the violator has not abated or remedied under
571  the zoning ordinance, within a time period set out in the written notice of violation from the locality or established
572  by the court of competent jurisdiction, the Seller shall provide to a prospective Purchaser a written disclosure
573  that so states. Such disclosure shall be provided to the Purchaser on a form provided by the Real Estate Board
574  on its website._____

575  **I. PROPERTY PREVIOUSLY USED TO MANUFACTURE METHAMPHETAMINE**: If a Seller of residential real
576  property has actual knowledge that the Property being sold (1) was previously used to manufacture
577  methamphetamine and (2) has not been cleaned up in accordance with state guidelines, the Seller is required
578  to provide a written disclosure to Buyer in accordance with Section 55.1-708 of the Code of Virginia. Pursuant
579  to Section 32.1-11.7 of the Code of Virginia, the Virginia Board of Health established Guidelines for Cleanup of
580  Residential Property Used to Manufacture Methamphetamine. If applicable, the Disclosure Statement for
581  Residential Property Previously Used to Manufacture Methamphetamine is attached to this Agreement as
582  required by the Code of Virginia.

583  **17. BROKERAGE FEE**: Selling Firm and Listing Firm are intended to be, and are, third party beneficiaries of this
584  Agreement with respect to payment of the brokerage fee and are entitled to payment at settlement as provided by
585  separate agreement(s). The settlement agent shall disburse the brokerage fee to Listing Firm and Selling Firm at
586  settlement.

587  **18. DEFAULT**: Subject to the provisions of paragraph 19 below, if either party defaults under this Agreement, the
588  nondefaulting party may pursue, in such party's discretion, all remedies available to the nondefaulting party at law
589  or in equity. In the event of default, Escrow Agent shall pay the Deposit to the nondefaulting party in accordance
590  with paragraph 5B and the nondefaulting party shall have the right to pursue such other rights and remedies against
591  the defaulting party as the nondefaulting party may have, both legal and equitable. All of the rights and remedies
592  hereunder are cumulative. The defaulting party shall be liable for the brokerage fee due Listing Firm and Selling
593  Firm. In any action arising from or related to this Agreement, including, but not limited to, any suit to secure the
594  release of the Deposit from escrow, the prevailing party shall be entitled to receive from the non-prevailing party or
595  parties, reasonable attorneys' fees, costs (including expert fees) and expenses incurred by such prevailing party.

596  **19. DISPUTE RESOLUTION**: Prior to initiating any litigation, the parties agree any dispute or claim arising out of, or
597  relating to, this Agreement, the breach of this Agreement or the services provided in connection with this Agreement,
598  shall be submitted to mediation. Upon assertion of a matter for mediation, the asserting party shall give written notice
599  to the other party requesting suitable arrangements for mediation. If, within thirty (30) days of written notice given by
600  the asserting party in the prior sentence, the non-asserting party does not reply, does not agree to mediation or does
601  not reach an agreement for a mutually acceptable, date, time, place and/or mediator, the asserting party shall have
602  no further obligation to endeavor to mediate and may assert any and all legal remedies available to the asserting
603  party. Solely for the purpose of this paragraph 19 with respect to the written notice requesting mediation to the non-
604  asserting party, such written notices shall also be required to be given to the principal and supervising broker of both
605  the Listing Firm and the Selling Firm. Disputes shall include, by way of illustration and not limitation, claims arising
606  from misrepresentations made by the parties to this Agreement in connection with the sale, purchase, financing,
607  condition or other aspects of the Property, including, allegations of concealment, misrepresentation, negligence
608  and/or fraud.

609





610 The following matters are excluded from mediation under the preceding paragraph: (a) judicial or non-judicial
611 foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or land contract; (b) an unlawful
612 detainer action; (c) the filing or enforcement of a mechanics lien; (d) any matter which is within the jurisdiction of a
613 probate court; or (e) violation of a state's real estate license laws. The filing of a judicial action to enable the recording
614 of a notice of pending action, or other provisional remedies, shall not constitute a waiver of the right to mediate under
615 this provision, nor shall it constitute a breach of the duty to mediate. If the parties cannot reach a mutually agreeable
616 settlement through mediation, they are free to arbitrate or litigate their dispute as if the mediation never took place.
617 The terms and provisions of this paragraph 19 shall survive settlement and conveyance of title to the property for a
618 period of five (5) years from the date of this Agreement pursuant to the terms of § 8.01-246 of the Code of Virginia
619 of 1950, as amended.

620 **20. OTHER PROVISIONS**:

621 | Seller to provide buyer with a 1 year Home Warranty up to $550 with a company of buyer's choice. |
622

623 **21. NON ASSIGNMENT**: This Agreement may not be assigned by Buyer without the written consent of Seller.

624 **22. TAX-DEFERRED EXCHANGE**: In the event Buyer or Seller desires to effect a tax-deferred exchange in connection
625 with the conveyance of the Property, Buyer and Seller agree to cooperate in effecting such exchange. The
626 exchanging party shall be responsible for all costs associated with such exchange. A non-exchanging party shall
627 assume no additional liability with respect to such tax-deferred exchange. Buyer and Seller shall execute additional
628 documents, including assignment of this Contract at no cost to the non-exchanging party, as shall be required to
629 give effect to this provision.

630 **23. NOTICES**: Except as provided below, all notices required to be sent to Seller under this Agreement shall be sent to
631 Listing Firm and all notices to be sent to Buyer shall be sent to Selling Firm. Except as provided below, all notices
632 required to be sent under this Agreement shall be given in accordance with one of the following methods: (a) hand
633 delivery; (b) United States mail, postage prepaid, provided that the sender retains sufficient proof of mailing, which
634 may be either a United States postal certificate of mailing or a certificate of service prepared by the sender confirming
635 such mailing; (c) electronic means provided that the sender retains sufficient proof of the electronic delivery, which
636 may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service
637 prepared by the sender confirming the electronic delivery; or (d) overnight delivery using a commercial service or
638 the United States Postal Service. Notices given pursuant to the Property Owners' Association Addendum to
639 Purchase Agreement, the Condominium Addendum to Purchase Agreement or the Cooperative Interest Addendum
640 to Purchase Agreement shall be given in accordance with their terms. The addresses set forth below each parties
641 name shall be the address for notice to such party unless such party subsequently gives notice in accordance with
642 this paragraph of a different address to be used for such party.

643 **24. MISCELLANEOUS**: Paragraph headings and section headings of this Agreement are inserted for convenience only
644 and shall not be deemed to constitute a part of this Agreement. **The term "day" shall be deemed to mean any
645 day of the week, Monday through Sunday, both inclusive regardless of legal or religious holiday. The term
646 "business banking day" shall mean Monday through Friday, except federal holidays.** "Day" shall mean 12:00
647 a.m. (midnight) until 11:59 p.m. Eastern Time. Any agreed upon timeframe shall begin at 12:00 a.m.(midnight) after
648 the event triggering the commencement of the timeframe and end at 11:59 p.m. Any changes may be made by
649 written amendment. This Agreement and any exhibits, addenda, modifications or amendments may be executed
650 i) in any number of counterparts and by facsimile or other electronic means, except with respect to digital signatures,
651 and ii) by different parties in separate counterparts, each of which when so executed and delivered shall be deemed
652 original, but all such counterparts shall constitute but one and the same instrument. To the extent any handwritten
653 or typewritten terms in this Agreement conflict with, or are inconsistent with the printed terms of this Agreement, the
654 handwritten or typewritten terms shall control. This Agreement is executed under seal. The terms of this Agreement
655 and the addenda, exhibits, modifications or amendments referenced herein or which reference this Agreement
656 constitute the entire agreement and there are no other agreements between the parties. Seller and Buyer both
657 authorize Listing Firm and/or Selling Firm to disclose financial information related to the sale of the Property,
658 including information related to settlement expenses (but not personal financial information) to the multiple listing
659 service and/or real estate appraisers. The waiver by Seller of any terms, conditions, or provisions of this Agreement
660 shall not be construed as a waiver of any other or subsequent term, condition or provision of this Agreement. If any
661 term, condition, or provision of this Agreement is declared illegal or invalid for any reason by a court of competent
662 jurisdiction, the remaining terms, conditions and provisions of the Agreement shall, nevertheless, remain in full force
663 and effect.

Initials: Buyer _____ _____ Seller _____ _____

OPTIONAL – if both Buyer and Seller initial below, digital signatures are acceptable for use in this transaction. If both Buyer and Seller do not initial below, digital signatures are not acceptable for use in this transaction. The following language is included for the sole purpose of determining the parties' agreement to accept digital signatures and is not required to be completed if the parties do not agree to accept digital signatures.

**EXPRESS AGREEMENT TO CONDUCT TRANSACTION USING DIGITAL SIGNATURES**: IN ACCORDANCE WITH THE UNIFORM ELECTRONIC TRANSACTIONS ACT (§ 59.1-479 ET SEQ. OF THE CODE OF VIRGINIA), BUYER AND SELLER CHOOSE TO ACCEPT DIGITAL SIGNATURES AS ORIGINAL DURING THE COURSE OF THIS TRANSACTION AND UNDERSTAND THAT AGREEING TO ACCEPT DIGITAL SIGNATURES FROM THE OTHER PARTY DOES NOT COMMIT THEM TO USING DIGITAL SIGNATURES EXCLUSIVELY. BY INITIALING BELOW, THE PARTIES AGREE TO USE DIGITAL SIGNATURES:

Buyer _____ / _____      Seller _____ / _____



Authentisign ID: 98393257-964D-EC11-9820-0050F210E5C6    AD7C-7E521D461CE2

664   THIS PROPERTY IS OFFERED WITHOUT RESPECT TO RACE, COLOR, RELIGION, SEX, HANDICAP,
665   FAMILIAL STATUS, SOURCE OF FUNDS, SEXUAL ORIENTATION, GENDER IDENTITY, MILITARY STATUS,
666   ELDERLINESS, NATIONAL ORIGIN, OR ANY PROTECTED CLASS UNDER FEDERAL, STATE OR LOCAL
667   LAW.

668   THIS IS A LEGALLY BINDING AGREEMENT; IF NOT UNDERSTOOD, SEEK LEGAL ADVICE.

669   BUYER(S) SIGNATURE(S):        _Alicia Speed_                    **11/24/2021**
670                                 **Alicia Speed**                        (Date)

671                                 _Avion Speed_                    **11/24/2021**
672                                 **Avion Speed**                        (Date)

673   BUYER(S) Address:            _____

674                               _____

675   SELLING AGENT SIGNATURE:    _Whitney Thomas_                  **11/24/2021**
676                               **Whitney L Thomas**                      (Date)

677   Selling Firm Name:          **Better Homes&Gardens R.E. Native American Grp**

678   Selling Firm Address:       **5224 Indian River Rd. #104**      **Virginia Beach**   **VA   23464**

679   REIN ID#    **102900**          VA License#          **0226019601**

680   Selling Agent Name:                    **Whitney L Thomas**

681   REIN ID#    **69452**           VA License#          **0225253037**

682   SELLER(S) SIGNATURE(S):    _Grecian Standley_                 11/24/2021
683                              **GRECIAN STANDLEY**                       (Date)

684                             _____

685                                                                        (Date)

686   SELLER(S) Address:          _____

687                              _____

688   LISTING AGENT SIGNATURE:   _Marsharee Similien_ Marsharee J Similien   11/24/21 24/2021
689                              **Marsharee J Similien**                    (Date)

690   Listing Firm Name:                    **1st Class Real Estate LLC**

691   Listing Firm Address:      **831 Seahawk Circ.**               **Virginia Beach**    **VA    23451**

692   REIN ID#    **126400**          VA License#          **0226024430**

693   Listing Agent Name:                   **Marsharee J Similien**

694   REIN ID#    **62628**           VA License#          **0225235808**

TRANSACTIONS
TransactionDesk Edition

| American Land Title Association | ALTA Settlement Statement - Seller |
|---|---|
| | Adopted 05-01-2015 |

File No./Escrow No.: ▮▮▮▮▮▮▮
Officer/Escrow Officer: ▮▮▮▮▮▮▮

**Champion Title & Settlements, Inc.**
21631 Ridgetop Circle
Ste 250
Sterling, VA 20166
(703) 444-4100



Property Address: 6424 ABERDEEN PLACE
SUFFOLK, VA  23435 (SUFFOLK CITY)
(304570500)

Seller: GRECIAN W. STANDLEY

Lender: Movement Mortgage, LLC
841 Seahawk Circle, Virginia Beach, VA  23452

Settlement Date: 1/7/2022
Disbursement Date:

| Description | Seller | | |
|---|---|---|---|
| | P.O.C. | Debit | Credit |
| **Deposits, Credits, Debits** | | | |
| Sale Price of Property | | | $340,000.00 |
| **Payoffs** | | | |
| Payoff of First Mortgage Loan to | | $276,678.00 | |
| **Commissions** | | | |
| Real Estate Commission to Better Homes & Gardens Real Estate Native American Group | | $8,500.00 | |
| Real Estate Commission to 1st Class Real Estate LLC | | $8,500.00 | |
| **Title Charges** | | | |
| Title - Document preparation to Kase & Associates, P.C. | | $150.00 | |
| Title - Settlement or closing fee to Champion Title & Settlements, Inc. | | $410.00 | |
| Title - Release Tracking Fee (Seller) to Lien Release Specialists, LLC | | $45.00 | |
| **Government Recording and Transfer Charges** | | | |
| County Deed Tax/Stamps to Virginia Clerk of the Circuit Court | | $170.00 | |
| State Deed Tax/Stamps to Virginia Clerk of the Circuit Court | | $170.00 | |
| | P.O.C. | Debit | Credit |
| **Subtotals** | $0.00 | $294,623.00 | $340,000.00 |
| Due To Seller | | $45,377.00 | |
| **Totals** | $0.00 | $340,000.00 | $340,000.00 |

Third parties may receive payments for settlement services from the fees disclosed on this statement.
The real estate brokerage commissions may be disbursed in part, directly to the agent, when requested and authorized in advance.
NPN: 1643239

**Acknowledgement**

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize Champion Title & Settlements, Inc. to cause the funds to be disbursed in accordance with this statement.

SELLER(S)

_____
GRECIAN W. STANDLEY

File #▮▮▮▮▮▮
Printed on 12/2/2021 at 3:50 PM